IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| OSAGE EXPLORATION & DEVELOPMENT, INC., and U.S. ENERGY DEVELOPMENT CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-14-1319-C |
| STEPHENS ENERGY GROUP, LLC, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of a contract dispute. Plaintiffs filed a Motion for Summary Judgment (Dkt. No. 37) on June 5, 2015. Defendant filed a combined Response and Motion for Summary Judgment (Dkt. No. 38). Plaintiffs have filed a Response (Dkt. No. 43), and Defendant has filed a Reply (Dkt. No. 44). The Motions are at issue. All parties agree that the controlling contracts are clear and unambiguous and that adjudication at the summary judgment stage is appropriate. The undisputed facts are as follows:

On April 21, 2011, Plaintiffs Osage Exploration and Development, Inc. ("Osage") and U.S. Energy Development Corporation ("U.S. Energy") and non-party Slawson Exploration Company, Inc. ("Slawson") (collectively "the signing parties") entered into a Participation Agreement. All three companies are in the business of exploring for and developing oil and natural gas. Osage had developed oil and gas leads and had acquired a leasehold interest in lands referred to as the Nemaha Ridge Project Area ("the Project Area"). Through the Participation Agreement, U.S. Energy and Slawson agreed to participate with Osage in the

leasing, drilling, and development of the Project Area. Slawson acquired a 45 percent working interest and was named Operator of all wells in the Project Area. U.S. Energy acquired a 30 percent working interest. All three companies signed and executed the Participation Agreement. The Participation Agreement makes several references to an attached Operating Agreement. That attached agreement is unsigned. In or around December 2013, the signing parties entered into a written and signed Partition Agreement, which states the following: "the parties agree to terminate the Participation Agreement and the JOA [Joint Operating Agreement] as to all lands within the Nemaha Ridge Prospect, except for the JV [Joint Venture] Lands which shall continue to be controlled by the Participation Agreement and JOA." (Pls.' Br., Dkt. No. 37, Ex. 2, at 3.) The parties agree that the Partition Agreement is a modification and amendment to the Participation Agreement and Operating Agreement. On or around July 25, 2014, Slawson entered into a Purchase and Sale Agreement ("PSA") with Defendant, through which Slawson sold all of its rights, title, and interests—excluding overriding royalty interests—to Defendant. Those interests were transferred to Defendant through subsequent assignments, bills of sale, and conveyances. Slawson also transferred to Defendant all of the records and data in Slawson's possession related to the operation of the units and wells within the joint venture lands. The parties agree that Slawson was entitled under the Participation Agreement to "assign [its] rights, duties, and obligations hereunder, so long as any assignment by a Party hereto is expressly made subject to the terms and conditions herein contained." (Pls.' Br., Dkt. No. 37, Ex. 1, at 7.) However, Defendant asserts the position of Operator was one of the "rights" validly

2

transferred pursuant to the assignment clause in the Participation Agreement. Plaintiffs disagree and argue that the Operating Agreement controls the succession of the Operator position. The Operating Agreement states, "If Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned without any action by Non-Operators, except the selection of a successor." (Pls.' Br., Dkt. No. 37, Ex. 1, at 15.) The Operating Agreement further provides that once an Operator has resigned or been removed, the parties owning an interest in the Contract Area may select a new Operator. Relying on the Operating Agreement, Osage asserted that Slawson's assignment to Defendant was properly deemed a resignation and proposed the selection of a new Operator. On November 5, 2014, U.S. Energy and Osage—representing a 55 percent interest collectively—selected Osage as the successor Operator of the joint venture lands. Defendant—owning a 45 percent interest—declined to vote. On November 6, 2014, Osage requested that Defendant turn over possession of the units, wells, and records within the joint venture lands pursuant to the Operating Agreement. Defendant refused. Plaintiffs then filed suit in state court on November 19, 2014. Defendant removed the case to this Court a week later. Plaintiffs seek an order from the Court declaring that Osage is the Operator of the wells that are in the Project Area and enjoining Defendant from conducting operations of any well or unit under Osage's purview as Operator.

Summary judgment is properly granted if the movant shows that no genuine dispute as to any material fact exists and that the movant "is entitled to judgment as a matter of law."

3

Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated on other grounds by* Eisenhour v. Weber Cnty, 739 F.3d 496 (10th Cir. 2013)).

The ultimate dispute between the parties is whether Defendant or Osage is the successor Operator. Resolving this issue requires the Court to determine whether the

4

Participation Agreement and the Operating Agreement constitute a single agreement and whether the Operator position was an assignable right under the agreement. These questions are those of contract construction. "The cardinal rule in contract interpretation is to determine and to give effect to the contractual intent of the parties." Sunrizon Homes, Inc. V. Am. Guar. Inv. Corp., 1988 OK 145, ¶ 10, 782 P.2d 103, 107.

Plaintiffs assert that the Participation Agreement and the Operating Agreement must be construed as a single agreement. While Defendant doesn't argue that the agreements are separate and distinct, Defendant does argue that the Operating Agreement is merely a gapfiller and that the Court should disregard the operator resignation clause within the Operating Agreement as conflicting with the Participation Agreement. Defendant also emphasizes that the Operating Agreement is unsigned. "Oklahoma courts have recognized that a written contract can incorporate an extrinsic document by reference." Walker v. BuildDirect.com Techs., Inc., 733 F.3d 1001, 1005 (10th Cir. 2013) (citing High Sierra Energy, L.P. v. Hull, 2010 OK CIV APP 96, 241 P.3d 1139, 1144; Monkey Island Dev. Auth. v. Staten, 2003 OK CIV APP 64, 76 P.3d 84, 88). The Participation Agreement references the Operating Agreement eight times, including the following statement: "The drilling of each well in the Project Area shall be governed by the applicable operating agreement in the form attached hereto as Exhibit C (the 'Operating Agreement'). Where there is a conflict between the Operating Agreement and this Agreement, this Agreement will control." (Pls.' Br., Dkt. No. 37, Ex. 1, at 4.) Also significant is the Partition Agreement, which states that "Osage, Slawson, and US Energy, are all parties to that certain Participation

5

Agreement (and the Joint Operating Agreement (the 'JOA') attached thereto as Exhibit 'C')" and that the joint venture lands "shall continue to be controlled by the Participation Agreement and JOA." (Id., Ex. 2, at 1 & 3.) Based on the language in the agreements, the signing parties clearly intended to incorporate the Operating Agreement into the Participation Agreement, despite the fact that the Operating Agreement is unsigned. See Monkey Island, 2003 OK CIV APP 64, ¶¶ 16-17, 76 P.3d at 88 (finding that interpretation of the contract must include the text contained in a referenced but unattached and unsigned "Common Provisions" exhibit); see also Charles Mach. Works. Inc. v. Valley Ditch Witch, Inc., No. CIV-13-651-M, 2014 WL 1745059, at *4 (W.D. Okla. May 1, 2014) (finding that the Dealer Agreement clearly referenced and thereby incorporated an unsigned Standard Provision document). The result of incorporating the Operating Agreement into the Participation Agreement is that the intent of the signing parties is construed from the text of both documents. When determining intent, "'[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.'" Hirsch Holdings, L.L.C. v. Hannagan–Tobey, L.L.C., 2008 OK CIV APP 79, ¶ 14, 193 P.3d 970, 973 (quoting 15 Okla. Stat. § 158).

The parties agree that the contracts are clear and free of ambiguity. When a contract is unambiguous, "the court is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting." Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 12, 63 P.3d 541, 545 (footnote omitted). Generally, if a contract is unambiguous, extrinsic evidence is excluded. The parties have submitted extrinsic evidence

in the form of affidavits and the PSA between Slawson and Defendant. However, "[i]f a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended." Id. at ¶ 14, 546. Therefore, the Court's determination will rest solely on a four-corners examination of the Participation Agreement and the Operating Agreement.

The Participation Agreement states that the parties "may assign their rights, duties, and obligations hereunder, so long as any assignment by a Party hereto is expressly made subject to the terms and conditions herein contained." (Pls.' Br., Dkt. No. 37, Ex. 1, at 7.) The Operating Agreement states that "[i]f Operator terminates ITS legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator, Operator shall be deemed to have resigned." (Id., Ex. 1, at 15.) Defendant argues that the assignment clause in the Participation Agreement and the operator resignation clause in the Operating Agreement conflict and that therefore the resignation clause is not effective over the parties. The parties agree that under the terms of the Participation Agreement, the Participation Agreement controls over the Operating Agreement where there is a conflict. Under Oklahoma law, "[a] contract must be considered as a whole so as to give effect to all its provisions." Pitco Prod. Co., 2003 OK 5, ¶ 14, 63 P.3d at 546. 15 Okla. Stat. § 157 states that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Directly beneath the assignment clause, the Participation Agreement states that an "Operator shall have the right to require any Party who becomes an assignor to be the authorized agent for any of its

assignees." (Pls.' Br., Dkt. No. 37, Ex. 1, at 7.) The only other provisions in the Participation Agreement that discuss the Operator are the provision designating Slawson as the Operator and a few provisions setting forth some Operator duties. The Participation Agreement contains no provisions similar to the provisions in the Operating Agreement that set out terms for the resignation, removal, and selection of Operators. Viewing the agreement as a whole and "each clause helping to interpret the others," it is clear that the Participation Agreement and the Operating Agreement designate Slawson as Operator and that the Operating Agreement sets out the guiding terms for the changes in that position in the future. Defendant's interpretation of the contract would render the operator resignation and selection clauses in the Operating Agreement meaningless. Such construction is to be avoided pursuant to 15 Okla. Stat. § 157. Furthermore, Defendant's argument is dependent on a determination that the position of Operator is an assignable right contemplated under the Participation Agreement. However, nothing in the Participation Agreement indicates an intent of the signing parties to treat the position of Operator as an assignable right, and Defendant has provided no law supporting this assertion. Plaintiffs assert that Operator is a position of responsibility and not a contractual and assignable right. To support this argument, Plaintiffs cite 52 Okla. Stat. § 86.1(h), which states that "[t]he term 'operator' shall mean any producer of oil or gas who has drilled a well or wells into a common source of supply and is engaged in operating such well or wells for the purpose of producing oil or gas therefrom." Under Oklahoma law, "[c]ustom and usage should be considered when interpreting a contract." Oxley v. Gen. Atl. Res., Inc., 1997 OK 46, ¶ 19, 936 P.2d 943, 946

(citing 15 Okla. Stat. § 162); see Pitco, 2003 OK 5, ¶ 17, 63 P.3d at 546 n.24. Applying the standard industry definition provided above to the term "Operator" in the Participation Agreement and the Operating Agreement, the Court finds that the parties intended the term "Operator" to connote a position of responsibility and not an assignable right. Based on the reasoning above, the Court finds that no conflict between the assignment clause and the operator resignation clause exists.

Having determined that Slawson's assignment of the operator position to Defendant was not a valid assignment under the Participation Agreement and the Operating Agreement, the Court must now determine whether the selection of Osage as the successor Operator was valid. The Operating Agreement states that an Operator is deemed to have resigned if the "Operator terminates its legal existence, no longer owns an interest hereunder in the Contract Area, or is no longer capable of serving as Operator." (Pls. Br., Dkt. No. 37, Ex. 1, at 15.) Plaintiffs assert that Slawson was properly deemed to have resigned because Slawson transferred all of its working interest to Defendant and because Slawson was "no longer capable of serving as Operator" after Slawson transferred his working interest and all of the records and data relating to the operations. Defendant argues that Slawson did not resign because Slawson retained an overriding royalty interest. Defendant does not address whether Slawson was capable of serving as Operator. Regardless of whether an overriding royalty interest is sufficient "interest in the Contract Area," Slawson would not have been able to perform the many duties of Operator set out in the Participation Agreement and Operating Agreement after transferring all its control over the wells in the Project Area and all of the

9

data and records needed to conduct operations to Defendant. Osage was properly selected as the successor Operator by a majority interest in the Project Area, as required under the Operating Agreement. (Pls.' Br., Dkt. No. 37, Ex. 1, at 4.) Defendant does not assert otherwise.

Accordingly, Plaintiffs' Osage Exploration and Development, Inc. and U.S. Energy Development Corporation's Motion for Summary Judgment (Dkt. No. 37) is GRANTED. The Motion for Summary Judgment of Stephens Energy Group, LLC (Dkt. No. 38) is DENIED. The Court declares that Osage Exploration and Development, Inc. is the Operator of the wells which have been drilled and which are hereafter drilled in the Project Area pursuant to the terms of the Participation and Operating Agreements. Defendant is hereby enjoined from conducting operations or retaining records with respect to any unit or well in which Osage is the duly elected Operator. The Court orders that Defendant turn over to Osage all records and data necessary to the performance of Operator with respect to any unit or well for which Osage is the duly elected Operator. The Court shall issue a separate judgment.

IT IS SO ORDERED this 25th day of August, 2015.

ROBIN J. CAUTHRON
United States District Judge